GEORGE H. BEECHER AND WIFE *vs.* GARWOOD M. BALD-
WIN AND ANOTHER.

New Haven Co., June T., 1887. PARK, C. J., CARPENTER, PARDEE,
LOOMIS and BEARDSLEY, Js.

In actions on covenants against incumbrances the rule of damages is the
actual damage sustained by the plaintiff by reason of the breach of the
covenant. If he is evicted and there is a total failure of consideration,
he will recover the value of the land at the time of eviction, provided
he has paid the purchase money. If the purchase money has been
partly paid he will recover the amount paid with interest, not exceed-
ing the value of the land. The purchase money having been paid, if
the purchaser removes the incumbrance, the damages will be the
amount paid for that purpose, not exceeding the value of the land. If
the purchaser has paid nothing and is not evicted he will recover only
nominal damages.

The defendants owned a tract of land heavily mortgaged, and sold a por-
tion of it by warranty deed, with a covenant against incumbrances, to
the plaintiff for $12,500, of which the plaintiff paid $2,500 and gave
notes and a mortgage back for $10,000; the first mortgagee making an
agreement with the defendants to release his mortgage on receiving the
$10,000. The plaintiff failed to pay the notes, and the first mortgagee
foreclosed his mortgage and evicted the plaintiff. At this time the
property had greatly depreciated, and was not worth $10,000. The
plaintiff brought a suit upon the covenants 'of warranty and against
incumbrances in the defendants' deed, and the defendants pleaded a
set-off of the notes. Held—

1. That if there had been no set-off the plaintiff could have recovered only
nominal damages.

2. That the note could be used by way of recoupment to prevent any re-
covery on the part of the plaintiff.

The notes, as an independent cause of action, were barred by the statute
of limitations. Held not to affect them when used in recoupment.

A matter of recoupment grows out of the principal transaction and is
equitably attached to it and applicable in reduction of a claim upon it,
and so long as that claim is in force the matter of recoupment remains
available.

[Argued June 8th—decided October 21st, 1887.]

ACTION upon the covenants in a deed of real estate;
brought to the Superior Court in New Haven County. The
complaint contained four counts, the first and second of
which were held insufficient on demurrer. The third count

was on the covenant against incumbrances and the fourth on the covenant of warranty. To these counts the defendants filed a denial and a cross-complaint, and pleaded a set-off of sundry notes of the plaintiffs. The following facts were found by the court:

The defendants, on March 12th, 1867, made a contract with the treasurer of Yale College for the purchase of a tract of land in the city of New Haven, belonging to the college, for the sum of $24,000, of which $1,000 was paid down in cash, $3,000 was to be paid with interest on the first of May following, and the balance of $20,000 in two years with interest, with a right upon partial payments to receive a conveyance of a proportionate part of the land.

On the 18th of April, 1872, at which time there had been paid the college but $6,000 out of the $24,000, with interest upon the whole amount due, the defendants entered into a written contract with Mrs. Beecher, one of the plaintiffs, by which they agreed to convey to her on the first of May, 1873, a portion of the above mentioned tract for the sum $12.500, the title to be clear, she paying down $200, which she was to forfeit if she decided not to take the land. At this time Mrs. Beecher had full knowledge of the defendants' agreement with the treasurer of the college. In December, 1872, the college conveyed to the defendants all the land covered by their contract (except a small portion that had before been conveyed) and took from them a mortgage of the land then conveyed, to secure a note of $18,000 which they then gave for the balance of the purchase money.

On the 11th of March, 1873, Mrs. Beecher, being unable to pay for the land which was the subject of her agreement with the defendants in cash, as contemplated by the agreement, it was arranged between the parties that, instead of the purchase money contracted for being paid wholly in cash, the defendants would take the notes of the plaintiffs for $10,000 at eight per cent. interest, secured by mortgage of the land conveyed, and the balance of the purchase money only to be paid in cash. Accordingly on that day the defendants conveyed to her the land, and she at the same

time paid to them $3,016.80 in cash value, and also gave to them the five notes of herself and husband for $10,000 in the aggregate, with a mortgage deed of the same land to secure them. These notes are the ones which the defendants sought to set off. Both deeds were delivered contemporaneously. The notes were all dated March 11th, 1873, were each for $2,000, and were payable respectively in one, two, three, four and five years from their date.

At the time this arrangement was made and the deeds in accordance therewith passed, Mrs. Beecher knew that the defendants, upon payment to Yale College of any portion of their mortgage indebtedness, under the agreement with the treasurer, were entitled to receive a proportionate release of the mortgaged land.

The plaintiffs, immediately upon the execution of the original agreement, took possession of the premises, and remained in possession under the agreement and the deed given thereafter, till the proceedings to foreclose the mortgage to Yale College had resulted in a decree, and the time limited for redemption had expired, when, by virtue of the decree of foreclosure, the college took possession and evicted the plaintiffs therefrom.

The premises were, on March 11th, 1873, vacant and unoccupied without any buildings thereon, and so continued till the date of the plaintiffs' eviction therefrom.

The five mortgage notes of the plaintiffs were by an arrangement between Baldwin and Hine, and with the knowledge of Mrs. Beecher, divided between the defendants, Baldwin taking three and Hine two. No part of the principal of the notes held by Baldwin has ever been paid. The interest upon them was paid to him to September 11th, 1874, amounting in all to $720. Nothing due upon the notes since that date has been paid.

Mrs. Beecher gave to the defendant Hine, March 1st, 1874, a note for $500, and May 7th, 1874, another note of $500, to be applied, when paid, upon the principal of the notes held by him, and $960 was subsequently paid by her upon these notes. The interest upon these notes was

paid to him by her to March 11th, 1875. No other payments of either principal or interest have been made upon either of the notes held by Hine.

Before the petition for foreclosure was brought Mrs. Beecher refused to pay the defendants anything further upon the mortgage notes than she had already paid, and stated to them that she was unable to do so, and said she should be obliged to give up the land and lose what she had paid. After the suit was brought the defendant Hine applied to her to pay up what was due upon her mortgage debt, and informed her that if she would pay it, or the larger part of it, he could make arrangements with the college for a deed of the land to her; but she stated that she was unable to do so.

All the defendants in the foreclosure suit made default of appearance excepting the plaintiffs in this action, who appeared by their counsel; and on October 18th, 1877, a decree of foreclosure was obtained in the suit foreclosing all the defendants therein from all right to redeem the mortgaged premises upon their failure to pay the amount of the mortgage indebtedness, then amounting to $20,500, and interest thereon from the date of the decree, and the costs of suit taxed at $88.96.

The time limited for redemption expired on the first Thursday of May, 1878, when, all the defendants in the suit having failed to redeem, the title to the premises became absolute in the college corporation. The corporation also obtained a judgment of ejectment in the suit against the present plaintiffs, and they were immediately after evicted from the possession of the premises by the corporation taking peaceable possession thereof under the decree of foreclosure.

The foreclosure was obtained at the request and expense of the defendant Baldwin, and upon an agreement between him and the corporation that in the event none of the defendants in the foreclosure suit should redeem, the corporation would convey the property to him; which agreement

was without the knowledge or consent of the plaintiffs in this action.

Immediately afterwards the corporation, in pursuance of its agreement with Baldwin, conveyed a portion of the premises to him, and possession of the premises has been at all times thereafter withheld from the plaintiffs by the corporation and Baldwin and their grantees.

The decree of foreclosure went into effect without anything being done by the plaintiffs, or either of them, to relieve themselves from the operation of the decree.

The value of the land at the time of foreclosure was $6.500.

No complaint or demand relating to the subject of the present suit was made to or upon the defendants by the plaintiffs, or either of them, after the foreclosure proceedings and prior to the commencement of this suit.

All evidence offered to prove the amount of money paid by Mrs. Beecher upon her contract, and for the purchase of the land in question, and as interest upon the notes given by the plaintiffs, was objected to by the defendants, and such facts were found subject to the admissibility of such evidence.

And all evidence of knowledge on the part of the plaintiffs prior to the execution and delivery of the deed of March 11th, 1873, of the existence and contents of the agreement between the defendants and Yale College, was objected to by the plaintiffs, and the facts relative thereto were found subject to the admissibility of such evidence.

Upon these facts the case was reserved for the advice of this court.

*T. E. Doolittle* and *E. H. Rogers*, with whom was *J. G. Clark*, for the plaintiffs.

1. The plaintiffs are entitled to a judgment upon either of the covenants in controversy at their election. *Sterling* v. *Peet*, 14 Conn., 245.

2. Upon the covenant of warranty the plaintiffs' measure of damages is the value of the land at the date of the eviction. *Sterling* v. *Peet, supra.*

3. The plaintiffs are entitled to recover as damages for the breach of the covenant against incumbrances, the purchase money paid, with interest thereon. 3 Washb. R. Prop., side page 675; *Kelsey* v. *Remer*, 43 Conn., 129; *Chapel* v. *Bull*, 17 Mass., 213; *Jenkins* v. *Hopkins*, 8 Pick., 346; *Blanchard* v. *Ellis*, 1 Gray, 195; *Willson* v. *Willson*, 25 N. Hamp., 229, 235; *Patterson* v. *Stewart*, 6 Watts & Serg., 527; *Waldo* v. *Long*, 7 Johns., 173; *Dimmick* v. *Lockwood*, 10 Wend., 142; *Stewart* v. *Drake*, 4 Halst., 139; *King* v. *Kerr's Admrs.*, 5 Ohio, 155; *Lloyd* v. *Quimby*, 5 Ohio St., 262, 265.

4. The claims of the defendants in their cross-complaint entitle them to no relief and constitute no defense either legal or equitable. The relief asked for in it is predicated upon the claim that Mrs. Beecher at the time of her purchase knew that the land was subject to the mortgage to Yale College, that there was an agreement between the defendants and the college, that the defendants should have the right to sell and convey parts of the tract to purchasers, and upon the payment of a proportionate part of the mortgage debt the corporation would release all its interest under the mortgage in the land so sold, which was known to her, and that the plaintiffs gave their notes for the premises, which are now partly unpaid. But there is no averment in the defendants' pleadings that the plaintiffs entered into an agreement with the defendants that the money paid on the notes should be applied in reduction of the mortgage to the college. Indeed this part of the cross-complaint amounts to nothing more than that Mrs. Beecher, for her better security, took an agreement in addition to the covenants contained in the warranty deed, that the defendants would apply the purchase money, as fast as it was paid, in discharge of the incumbrance. But the case does not find that there was any such agreement. The right of action on the covenants cannot be affected by the introduction of parol testimony, showing the covenantee's knowledge of an outstanding incumbrance, or altering or varying the express covenant contained in the deed. *Hubbard* v. *Norton*, 10 Conn., 422;

*Townsend* v. *Weld*, 8 Mass., 146; *Harlow* v. *Thomas*, 15 Pick., 66; *Spurr* v. *Andrews*, 6 Allen, 420; *Earle* v. *De Witt*, 6 Allen, 520; *Howe* v. *Walker*, 4 Gray, 318; *Johnson* v. *Walter*, 60 Iowa, 315. The case finds that before the college brought its petition for foreclosure, Mrs. Beecher refused to pay the defendants anything further upon the mortgage notes than she had already paid, and stated to them that she was unable to do so, and said she should be obliged to give up the land and lose what she had paid. In *Lloyd* v. *Quimby*, 5 Ohio St., 265, the rule is stated as follows: "It is true the grantee, while the prior mortgage remained only an incumbrance, might have discharged it if he had possessed the pecuniary ability, and thus saved himself from eviction; but then so might the grantor. The grantee, whether able or willing or not, was in no way bound to do it, and had a right to expect that the grantor would do it, while he the grantor was bound to do it,—bound by the obligation of his express covenants." See also to the same point, *Miller* v. *Halsey*, 2 Green, 48; *Stewart* v. *Drake*, 4 Halst., 143; *Burk* v. *Clements*, 16 Ind., 132. And Mrs. Beecher, after her eviction, had a right to resist the payment of the notes, and the defendants are not now entitled to an injunction restraining her from enforcing her covenants. A purchaser who accepts his deed with full knowledge of the defect or incumbrance relies solely upon his covenant for his protection, and the collection of the purchase money cannot under these circumstances be enjoined because of the presence of a covenant for seizin or against incumbrances or of warranty, for the reason that an opposite course would impose upon the parties a contract they did not make. And the authorities establish the proposition that the interference of equity to restrain the collection of the purchase money should be refused when the facts continue as they were at the date of the conveyance, unless the vendor's non-residence or insolvency is shown. Rawle on Cov. for Title, 638, 683; *Lighty* v. *Shorb*, 3 Pen. & Watts., 447; *Murphy* v. *Richardson*, 28 Penn. St., 293; *Wilson* v. *Cochran*, 46 id., 230; *S. C.*, 48 id., 107; *Youngman* v. *Linn*, 52 id., 413; *Woodruff* v. *Bunce*, 9 Paige,

443; *Wimberg* v. *Schwegeman*, 97 Ind., 530; *Allen* v. *Thornton*, 51 Geo., 594; *Wailes* v. *Cooper*, 24 Miss., 208, 232; *Redfield* v. *Woodfolk*, 22 How., 318. The cross-complaint avers the plaintiffs' insolvency, but that fact was not proved and is not found. A mere inability to pay debts does not constitute insolvency. *Rogers* v. *Thomas*, 20 Conn., 62; *Millard* v. *Webster*, 54 id., 415. The covenants in the mortgage back from the plaintiffs to the defendants do not operate to preclude the maintenance of an action on the covenants of the defendants' deed, either by way of estoppel or rebutter, or to prevent circuity of action. The purchaser in such a case pledges nothing but the interest which he obtained under the deed to him, and is not answerable for any imperfection in the title existing before the conveyance. *Hubbard* v. *Norton*, 10 Conn., 422; *Brown* v. *Staples*, 28 Maine, 497; *Smith* v. *Cannell*, 32 id., 125; *Haynes* v. *Stevens*, 11 N. Hamp., 28; *Sumner* v. *Barnard*, 12 Met., 461.

5. The defendants have no right to the set-off asked for, the debts being barred by the statute of limitations. All of the notes which the defendants ask to have set off bear date March 11th, 1873, and are negotiable. The statute of limitations began to run on these notes in one, two, three, four and five years from their dates and the action was not begun till February 5th, 1885, considerably more than six years subsequent to the date when the right of action accrued upon the note having the longest time to run. The pleadings admit and the court finds that since the year 1875 the plaintiffs have refused to make any further payments upon the notes, and have always since so refused. Moreover, the plaintiffs' replies to the defendants' set-off and cross-complaint setting up the statute of limitations as a bar to the relief asked for in their pleadings, remain unanswered. The rule is fully established that the statute of limitations operates against a demand equally, whether it be sued upon or brought in by way of set-off. *Alsop* v. *Nichols*, 9 Conn., 357, 365; *Tyler* v. *Boyce*, 135 Mass., 558; *Turnbull* v. *Strohecker*, 4 McCord, 210; *Nolin* v. *Blackwell*, 31 N. Jer. Law, 170; *Harwell* v. *Steel*, 17 Ala., 372. Courts

of equity, in cases of concurrent jurisdiction, enforce the statute of limitations in obedience to it; and the fact that a person, if left to the relief which his legal remedies give him, will fail if the statute of limitations be pleaded, is no ground for relief in equity. Courts of equity must adjust the rights of parties according to the conditions which the statute of limitations imposes. *Phalen* v. *Clark*, 19 Conn., 421; *Farnam* v. *Brooks*, 9 Pick., 242; *Pendleton* v. *Taylor*, 77 Virg., 583; *Walker* v. *Smith*, 8 Yerg., 241; *Badger* v. *Badger*, 2 Wall., 94.

*C. R. Ingersoll* and *W. B. Stoddard*, for the defendants.

·CARPENTER, J. The facts of this case, stripped of immaterial matters, may be briefly stated. The defendants were the owners of some real estate which was heavily mortgaged to Yale College. They sold a portion of it, subject to the mortgage, to the plaintiff, for $12,500. It was understood that the mortgage was to be removed from that portion sold to the plaintiff, so that she was to have a clean title. The transaction however took another form. In March, 1873, the plaintiff paid $2,500 of the purchase money, received a warranty deed of the premises containing the usual covenants, and mortgaged the same premises to the defendants to secure the balance of the purchase money. It was arranged between the college and the defendants that the purchase money, when paid, was to be applied in part payment of the incumbrance, and that the college was to quit-claim its interest in the premises to the plaintiff. The plaintiff knew of the incumbrance at the time, and of the arrangement by which it was to be extinguished. She failed to pay the balance of the purchase money; consequently the incumbrance was not removed, and she did not acquire a complete title.

Yale College, at the instance of one of the defendants, foreclosed its mortgage, the foreclosure taking effect early in May, 1878, and evicted the plaintiff. The property at that time was worth but $6,500, being several thousand

dollars less than the unpaid portion of the purchase money.
The plaintiff declined to pay her notes, stating that she
" should be obliged to give up the land and lose what she
had paid."

In February, 1885, this suit was brought.   The complaint
is in four counts.   A demurrer was filed, which was sus-
tained as to the first and second counts, and overruled as to
the third and fourth.   The answer to the third and fourth
counts denied the material allegations of the complaint.
The defendants also pleaded a set-off, and filed a cross-
complaint.

The third count is on the covenant against incumbrances,
and the fourth is on the covenant of warranty.   The plaint-
iff claims that she is entitled to a judgment on either count
at her election ; the defendants claim that she is entitled to
recover on neither.

In actions on the covenant against incumbrances the
court will endeavor to give to the plaintiff the actual damage
sustained by the breach of the covenant.   If the plaintiff is
evicted, and there is thereby a total failure of consideration,
he will recover the value of the land at the time of the
eviction, provided he has paid the purchase money.   If the
purchase money has been partially paid he will recover the
amount paid with interest, not exceeding however the value
of the land.   The consideration having been paid, if the
purchaser removes the incumbrance, the rule of damages is
the amount paid for that purpose, not exceeding the value
of the land.   If the purchaser pays nothing towards the
removal of the incumbrance and is not evicted, he will
recover only nominal damages.

These are the general rules; in applying them however
care will be taken in each case to do no injustice to either
party.   The leading principle is to give effect to the real
intention of the parties.   Both parties intend that the title
shall vest in the purchaser.   If the value increases he has
the benefit of it ; if it decreases he bears the loss.   To secure
to him the one and subject him to the other the rule has
been adopted to limit the damages by the value of the land

at the time of the eviction. Thus it will sometimes happen that he will recover more than the consideration paid and sometimes less. To give the seller the benefit of an increased value, or to require him to bear the loss of a depreciation, would be a perversion of the fundamental principle on which the rule rests.

In the present case, if the plaintiff recovers on the third count the consideration paid by her, she loses nothing by the transaction. Although the premises depreciated in value nearly one half, yet the whole loss falls upon the defendants. That cannot be as the parties intended it. On the other hand, suppose the property had increased in value fifty per cent. or more. The plaintiff then could have paid her notes and had the benefit of the enhanced value. We know of no method by which the defendants could legally have deprived her of that privilege. If now it is so that she can with the aid of the court compel the defendants to bear the loss, there must be some defect either in the law or in its administration.

If the plaintiff had paid the consideration the incumbrance would have been removed and she would have had a clean title according to her contract. That is precisely what the parties intended. It was not contemplated that the incumbrance would be removed in any other manner or by any other means. If she had paid, and the defendants had removed the incumbrance, her loss doubtless would have been greater than it now is; and yet in this action she could have recovered only nominal damages. In that case it would have been very clear that her damage resulted, not from the breach of the covenant, but from the depreciation in the value of real estate.

By the original contract the plaintiff purchased and the defendant sold the premises as though they were free from incumbrance. The contract provided that the purchase money should be paid and the incumbrance removed when the deed should be given. But the plaintiff being unable to pay the purchase money, a change was made in the form of the transaction only—a change wholly for her benefit. In

substance it was still a sale of the land—the whole title, and not merely an equity of redemption. The purchase money was to be used for the double purpose of extinguishing the mortgage to Yale College and the plaintiff's mortgage to the defendants. It was wholly her fault that it was not so used. It resulted from her failure to perform her agreement. She deliberately violated her contract, and now seeks to take advantage of her own wrong to the prejudice of the defendants. Having wronged them once she now virtually insists that she has thereby acquired a right to inflict upon them a further wrong.

Suppose the transaction had been in form what it really was in substance—a sale of an unincumbered piece of land for $12,500. The purchaser paid $2,500, and gave her note for $10,000, secured by a mortgage of the same premises. After three or four years the property so far depreciated in value that it was worth much less than the mortgage on it; so much less that it was more advantageous for the purchaser to forfeit the amount already paid than to pay the balance. Now let us further suppose that the purchaser in this state of things makes a claim on the seller for the amount of the purchase money actually paid, with interest; would a court of justice seriously entertain such a preposterous claim? And yet that is virtually the claim presented and strenuously urged in this case. The only difference is that in this case the form of the transaction gives the plaintiff a naked right of action; but it rests on the purest technics, being entirely destitute of merit. The plaintiff therefore is entitled to recover at most but nominal damages.

But the plaintiff is not entitled to recover even nominal damages. The defendants plead a set-off of the notes given for the purchase money, amounting to about $10,000. One thing may be noticed in this connection with respect to these notes. They are either valid subsisting notes or they are not. If not they are not collectible and would not ordinarily be the subject of a set-off. If valid, or if for the purposes of this case they are to be treated as valid, they may be set off. It is unnecessary to consider to what

extent they are collectible by the defendants; for the plaintiff, in claiming to recover substantial damages, proceeds upon the theory that she may require the defendants to make their deed good. If she may, she thereby becomes obligated to pay her notes. As the set-off assumes the validity of the notes, the defendants thereby impliedly admit their liability on their covenants. In discussing the matter of set-off we shall assume the liability of both parties—the defendants on their covenant and the plaintiff on her notes.

As the plaintiff in no event can recover to exceed $6,500 and interest, and the notes amount to a much larger sum than that, the set-off is an answer to the plaintiff's demand unless the notes are barred by the statute of limitations.

The statute provides for a set-off of mutual debts. Mutual debts growing out of the same subject matter have been set off, aside from the statute, especially in equity. The statute allows all such debts to be set off at law, and extends the equitable principle to independent debts, or debts growing out of different transactions. A set-off under the statute was refused by this court in *Alsop* v. *Nichols*, 9 Conn., 357, where the debt claimed to be set off was barred by the statute of limitations.

By statute the defendant may recover a balance if his claim is greater than the plaintiff's; but no recovery can be had if the debt is barred.

In *Avery* v. *Brown*, 31 Conn., 398, the court makes a clear distinction between independent debts and debts growing out of the same transaction. The former, if mutual, are proper subjects of set-off under the statute. The latter may be applied in reduction of the plaintiff's demand without the aid of the statute. In this case there would be difficulty in applying the statute and allowing the defendant to recover a balance; but as these claims arose in the same transaction, and are so connected that one is the consideration for the other, there can be no difficulty in allowing the one to be used in reduction of the other. In *Avery* v. *Brown* this court said (p. 401) :—" The policy of the

law is always to prevent unnecessary litigation, and where in a pending suit entire justice can be done to both of the parties before the court by the ascertainment and set-off of their mutual claims against each other without a violation of any of the settled rules or forms of law, such set-off ought always to be made." The court also quotes approvingly from Parsons on Contracts as follows :—" A defendant may deduct from the plaintiff's claim all just demands or claims owned by him in the very same transaction, or even in other but closely connected transactions."

Applying the unpaid portion of the purchase money in reduction of the plaintiff's demand, is but an application of the principle that if the grantee fails to pay the purchase money, the real consideration for the deed, he is not entitled to recover in an action on the covenants in the deed—certainly no more than nominal damages. To such a claim, when offered in common speech as a set-off, but more accurately speaking by way of recoupment, the statute of limitations has no application.

" Not only does the bringing of an action stop the operation of the statute as to a proper matter of set-off, but it also seems that it revives a claim which is actually barred out, which is the proper subject of recoupment in the action, as damages growing out of the same transaction." Wood's Limitation of Actions, 602. " Where there are cross demands between parties, which accrued nearly at the same time, both of which would be barred by the statute, and the plaintiff has saved the statute by suing out process, but the defendant has not, the defendant may nevertheless set off his demand." Angell on Limitations, § 75.

It seems clear therefore that, if substantial damages are recoverable, the notes as a set-off or recoupment are a complete defense ; and they are equally a defense if only nominal damages are recoverable. Each party broke the contract, and each party is technically liable to the other. One demand may well offset the other, so that neither can recover.

Under the covenant of warranty the plaintiff claims that

she is entitled to recover the value of the land at the time of the eviction. That would be the extent of her recovery if she had paid the purchase money. That being unpaid, it would seem that she would be entitled to recover much less. But however that may be, even if we concede her claim as made, the set-off answers it fully.

The reasons given against a recovery on the third count are equally applicable to the fourth. The difficulty with the plaintiff's whole case is that by the real contract between the parties, in equity at least, the eviction was the necessary consequence of her failure to pay the purchase money; and that whatever loss she sustained resulted not from the breach of the covenants but from the depreciation in the value of the estate purchased.

The Superior Court is advised to render judgment for the defendants.

In this opinion the other judges concurred.